MILWAUKEE AUTOMOBILE MUTUAL INSURANCE COMPANY AND ANOTHER v. HANSORD PONTIAC COMPANY.

136 N. W. (2d) 381.

July 16, 1965—No. 39,595.

---

[8]See, e. g., S. T. McKnight Co. v. Tomkinson, 209 Minn. 399, 296 N. W. 569, 134 A. L. R. 850.

*Bernard M. Harroun,* for appellant.
*William J. McGrath,* for respondent.

OTIS, JUSTICE.

Plaintiff brings this action as a bailor's subrogated insurer to recover the value of an automobile stolen while in the possession of defendant bailee. The court, hearing the matter without a jury, found for plaintiff in the sum of $1,759.65. Defendant appeals from an order of the municipal court of Minneapolis denying its motion for amended findings or a new trial.

On October 11, 1960, the insured bailor, Gertrude Oja, left her Pontiac automobile for minor repairs at defendant's place of business at 17th Street and Nicollet Avenue in Minneapolis. Upon her return, the car could not be found. About a month later, the plaintiff-insurer paid Mrs. Oja $2,800 for her automobile and $235.70 for the rental of a substitute car. In February 1962, the car was recovered and steps were taken by the plaintiff to salvage whatever value could be realized. Ultimately, the car was sold pursuant to sealed bids for the sum of $1,305. This action was brought against the defendant for the difference between the amount paid by plaintiff to Mrs. Oja and the amount received from the sale of the vehicle, less expenses incurred by plaintiff in securing a license, towing fees, advertising for sale, and storage.

■ Defendant assigns as error the value of $1,305 placed by the trial court on the automobile at the time of its recovery. In support of its position, defendant relies on a report executed on plaintiff's behalf on February 27, 1962, describing the condition of the automobile as follows:

"The enclosed sheet identifies this unit and also gives notes on the present mileage, 18,725 and notes on the condition of the vehicle at

this time. Two tires are worn bald while two show 70% wear. The car is exceedingly dirty. The engine does appear to be in proper running condition. We checked the oil and water, and the transmission fluid level and found them all proper.

"We believe this is all that you required and yet if additional help is necessary we shall be glad to assist. It is rather evident that the three items listed at top of the sheet, plus a cleanup, plus tires will have to be taken care of in order to enhance its value before placing it up for sale."

At the trial, the manager of the company which had purchased the automobile from plaintiff testified on cross-examination that the car would have been worth $1,800 to $1,900 had it been in good condition in February 1962, and stated that the cost of cleaning the interior was about $10 and that a set of new tires would cost between $60 and $100. It is the contention of defendant that the trial court was obliged to accept this testimony in arriving at the salvage value. Hence, it is argued, the car was worth $1,790, or the difference between $1,900 and $110. However, we do not believe the trial court was conclusively bound by this evidence. There was other equally persuasive testimony that the car had been painted during the time it was stolen, making it necessary that it be repainted; that there was damage to the right front and left rear portions of the body; that new floor mats were required; that the padded dash had come loose; that there were rips and tears in the upholstery; that the tires required replacement; and that the brakes were worn out. In the light of this testimony, we hold the evidence amply supports the court's finding that the amount realized from the sale accurately reflected the reduced value of the car in February 1962.

■ On the issue of liability, defendant's service manager described the procedure by which an automobile brought in for repair was processed. He stated that an identification number was placed on the windshield and the car was either taken to a production stall for immediate attention or put on an adjacent lot for storage until mechanics were available to do the work. The storage lot was at La Salle Avenue and 15th Street and had a capacity of 80 cars. It was enclosed by a

7-foot chain-link fence with two entranceways, one of which was open from 7 a. m. to 4 p. m. and one from 7 a. m. to 6 p. m. Cars were driven back and forth between the lot and the garage by three runners. When service or repairs were finished, the car was brought back to the lot and left there with the keys in the ignition. There were no guards at the gates, although one person was in attendance about 95 percent of the time.

The defendant made the following offer of proof to which objection was sustained:

"The defendant will offer to prove by this witness through this testimony that it is the custom and practice of service managers in the Twin City area to put cars into fenced parking lots adjacent to their property while waiting for repairs and while in that property to leave the keys in the ignition of the car and that this is the course of conduct followed by every service garage in the Twin City area."

In a memorandum accompanying the findings, the trial court stated it had reversed its ruling on the offer of proof and was considering it as evidence in the case. However, the court held that the practice described did not necessarily constitute due care but was rather a practical business risk which garages were willing to assume. The court concluded that the defendant was negligent in its control and care of the Oja vehicle.

We believe it was proper for the court to treat the offer of proof as evidence for purposes of rendering its decision. In such a situation there can be no prejudice except to the party against whom the evidence is received, since it is he who is deprived of a right to rebuttal. Where, as here, the ruling is against the party prevailing in the litigation, that objection is of no consequence.[1]

■ The law in this state governing the liability of a bailee for damage to bailed goods or for failure to return them to the bailor is well settled. Once the bailment has been established, the bailee has the bur-

---

[1]Green v. Northwestern Trust Co. 128 Minn. 30, 33, 150 N. W. 229, 230, L. R. A. 1916D, 739; Zakrzewski v. G. N. Ry. Co. 131 Minn. 175, 154 N. W. 966.

den of persuasion as well as the burden of going forward with the evidence in proving its freedom from negligence.[2]

In our opinion the trial court was entirely justified in holding defendant negligent. The bailee by its offer of proof has established the fact it conformed to the practice in the automobile business. However, apart from the presumption the car was stolen, defendant has wholly failed to show the circumstances under which the Oja vehicle disappeared. We cannot therefore say the bailee has sustained its burden of proof as a matter of law.

Affirmed.

---

[2]Harding v. Shapiro, 165 Minn. 248, 206 N. W. 168; Peet v. The Roth Hotel Co. 191 Minn. 151, 156, 253 N. W. 546, 548; Dennis v. Coleman's Parking & Greasing Stations, 211 Minn. 597, 601, 2 N. W. (2d) 33, 35; Murphy v. Co-op Laundry Co. 230 Minn. 213, 41 N. W. (2d) 261; Central Mutual Ins. Co. v. Whetstone, 249 Minn. 334, 336, 81 N. W. (2d) 849, 851; Wallinga v. Johnson, 269 Minn. 436, 438, 131 N. W. (2d) 216, 219.