PARTNERSHIP INVESTMENTS OF MINNESOTA, INC.
v. RONALD E. LYBECK.

243 N. W. 2d 150.

June 11, 1976—No. 45823.

*Holmes, Eustis, Kircher & Graven* and *David L. Graven,* for appellant.

*Chestnut, Brooks & Burkard, Joseph T. Burkard,* and *Thomas H. Graham,* for respondent.

Heard before Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from a judgment of the Carver County District Court dismissing an action for specific performance or damages brought by plaintiff, Partnership Investments of Minnesota, Inc. (hereinafter PII), against defendant, Ronald E. Lybeck.

On December 1, 1971, Ronald Lybeck and his wife, Rose, signed a contract with PII involving approximately 186 acres of land in Carver and Hennepin Counties. Lybeck had purchased

the land from two separate parties. According to the terms of the contract, PII was to purchase a one-half interest in the property owned by Lybeck. A corporation was to be formed at equal cost to both parties, and each of the parties was to contribute one-half interest in a portion of the entire property to the new corporation. The corporation was to serve as the general partner of a limited partnership also to be formed. Lybeck and PII each would own one-half of the shares of the corporation.

Paragraph 2(e) of Article II of the contract states:

"Lybeck shall have the exclusive right to act as broker in the sale of such limited partnership units all as more fully set forth in Article IV hereof."

Article III requires that 100 percent of the limited partnership units be sold prior to closing, and that the closing take place not later than 18 months, 45 days, from the "effective date of syndication" which is defined as "that date upon which the Securities and Exchange Commission and/or the Minnesota Securities Commission has approved the prospectus for the New Limited Partnership and the offering to be made pursuant to said prospectus."

Article IV, par. 2, states:

"Ronald E. Lybeck shall be granted the right to be the exclusive agent under an agency and indemnification agreement agreeable to the parties. Pursuant to such agreement, Ronald E. Lybeck and persons associated with him shall have the right to sell all units in the New Limited Partnership at a commission in the amount of ten per cent (10%) of the public offering price on such shares * * *."

The focus of this dispute is Article IV, par. 3, which states in part:

"PURCHASE OPTIONS. In the event that 100% of all of the limited partnership units are not sold on or before a date eighteen (18) months subsequent to the effective date of syndication, then in such event PII shall have an option for a period of thirty (30)

days from and after said date eighteen (18) months subsequent to the effective date of syndication to purchase all of Lybeck's undivided one-half interest in the property and all of Lybeck's undivided one-half interest in the New Corporation."

There is no clause in the agreement as to the date by which the new corporation or limited partnership must be formed or the prospectus submitted to the Securities Exchange Commission or the Minnesota Securities Commission for approval.

In subsequent negotiations, Lybeck sought a modification of the contract so that the PII purchase option triggered by the failure to sell the full $2,300,000 of public units would not apply if $1,800,000 worth were sold. PII refused this modification. In December 1972, Lybeck refused to proceed with the sale of the partnership units unless the original PII option was not to be exercisable if $1,800,000 worth of units were sold. PII made no further efforts to proceed with the mutual obligations of the parties under the contract for the formation of the corporation and limited partnership, the transfer of property to those entities, and obtaining approval of the limited partnership from the Securities and Exchange Commission or the Minnesota Securities Commission.

Two issues are presented here:

(1) Did the trial court err in finding that defendant had an option not to sell the partnership units?

(2) Did the trial court err in finding plaintiff had a duty to proceed with defendant in forming the new corporation and limited partnership after the defendant decided not to sell the partnership units?

According to Article II, par. 2(e), of the contract, defendant was given "the exclusive right to act as broker" in the sale of the limited partnership units. Article IV, par. 2, states: "Ronald E. Lybeck shall be granted the right to be the exclusive agent under an agency and indemnification agreement agreeable to the parties." This is an exclusive agency agreement rather than an agreement giving defendant Lybeck the exclusive right to sell.

Smith v. Preiss, 117 Minn. 392, 136 N. W. 7 (1912) ; 3A Dunnell, Dig. (3 ed.) § 1141. The fact that defendant was given an exclusive agency, however, does not imply that this duty was mandatory. Several duties in the contract are mandatory, such as the creation of the corporation and the formation of the partnership (Art. II, pars. 1[a,b,d]; Art. II, pars. 2[a,b,c,d]). These are obligations of both parties under the contract.

The trial court found that the exclusive agency clause did not give Lybeck the exclusive right to sell the limited partnership units and did not preclude PII from syndicating the limited partnership and proceeding to sell the units if Lybeck failed to do so. The court held that, although Lybeck would forfeit his right to commissions if he did not proceed to exercise his exclusive agency, he had to be the selling agent for the units before the purchase option clause was triggered.

Plaintiff argues that the purchase option agreement is not conditioned on Lybeck's being the selling agent and that the option was triggered by Lybeck's failure to syndicate the units. The trial court rejected this argument, finding that if Lybeck did not sell all the units he would only lose his sales commissions. That court's interpretation of the contract is supported by the last part of Article IV, par. 3, relating to a delay in the purchase option:

"Notwithstanding the above provisions, Lybeck shall be granted an additional period of time beyond the expiration of said eighteen (18) month period subsequent to the effective date of syndication, such additional period of time to be not in excess of 45 days and to be granted only in the event that during the aforesaid eighteen (18) month period *Lybeck has been unable to sell* 100% of said limited partnership units by reason of Lybeck's physical incapacity." (Italics supplied.)

This section suggests that the purchase option agreement in Article IV, par. 3, is conditioned on sales by Lybeck. If the purchase option clause was triggered automatically upon approval of the limited partnership offering by the state, or the Secu-

rities Exchange Commission, Lybeck's option to sell would be negated and he would be obligated to sell when that approval had been acquired because the purchase-option-clause time period would then start running. It is unreasonable to assume that defendant deliberately created a situation where he automatically risked the remaining one-half of his property by agreeing that the date on which approval of the offering was obtained would so trigger the purchase option clause. Construing the contract as a whole, we cannot say the trial court was clearly erroneous in finding that Lybeck's failure to exercise his sales option did not trigger the purchase option clause.

Plaintiff argues that since defendant chose not to proceed with the syndication process, PII could not thereafter proceed in the joint venture. This is not persuasive. There is no evidence that defendant was not willing to proceed with the joint formation of the corporation and the sale to the limited partnership of his half interest in the property. The only refusal by defendant was his refusal to sell the units and trigger the purchase option clause. Plaintiff's argument that the refusal to sell the units is a refusal of the joint mandatory contract duty to "syndicate" assumes refusals not made by defendant. The trial court found that "the evidence fails to support an anticipatory breach of contract by defendant sufficient to conclude a breach thereof by defendant." Although plaintiff challenged this conclusion in its reply brief, the trial court's finding cannot be reversed unless it is clearly erroneous, and we do not so find. State, by Burnquist, v. Bollenbach, 241 Minn. 103, 63 N. W. 2d 278 (1954).

Because defendant was not obligated to sell the partnership units, his refusal to do so is not a breach of contract entitling plaintiff to damages or specific performance. Plaintiff's action, in the absence of a breach of contract, is premature.

Affirmed.