FEDERATED MUTUAL INSURANCE COMPANY, Respondent,

v.

LITCHFIELD PRECISION COMPONENTS, INC., Appellant (C6–89–2301),

and

Robins, Zelle, Larson & Kaplan, Appellant (C1–89–2254).

Nos. C6–89–2301, C1–89–2254.

Supreme Court of Minnesota.

May 25, 1990.

Rehearing Denied June 19, 1990.

Robert T. Stich, Stich, Angell, Kreidler & Muth, P.A., Minneapolis, for Litchfield Precision Components, Inc., appellant (C6–89–2301).

Bryan K. McKamey, Richard B. Allyn, Terrence R. Joy, Minneapolis, for Robins, Zelle, Larson & Kaplan, appellant (C1–89–2254).

Michael C. Lindberg, Johnson & Lindberg, P.A., Minneapolis, for respondent.

POPOVICH, Chief Justice.

Respondent believed its subrogation action, arising out of a claim it paid for property destroyed in a fire, was nullified when certain evidence from the fire site was discarded. Without pursuing its subrogation claim, respondent brought this action alleging tort liability should be imposed on appellants for negligently or intentionally destroying this evidence under a new spoliation tort not yet recognized in Minnesota. In denying appellants' motions to dismiss for failure to state a claim and for summary judgment, the trial court held the negligent and intentional spoliation claims were actionable. The trial court subsequently certified the following three questions as important and doubtful pursuant to Minn.R.Civ.App.P. 103.03(h):

1. Whether this jurisdiction recognizes a cause of action in tort for intentional spoliation of evidence, and if so, what are the elements of such a tort?

2. Whether this jurisdiction recognizes a cause of action in tort for negligent spoliation of evidence, and if so, what are the elements of such a tort?

3. Whether Plaintiff established a sufficiently cognizable injury to proceed on any and all of its causes of action against the Defendants prior to a resolution of the underlying subrogation claim?

## I.

The following facts are summarized from the trial court's memorandum and the parties' pleadings and affidavits. On January 25, 1986, a fire occurred at a facility owned by appellant Litchfield Precision Components ("LPC"), destroying property owned by Infinite Graphics, Inc. ("IG"). As IG's insurer, respondent Federated Mutual Insurance Company ("Federated") paid IG $48,685 for the value of the property destroyed. Federated retained investigator Robert Schroeder to determine the cause of the fire. Six days after the fire LPC employees refused entry to a technician assisting Schroeder, thus this technician examined the site from a distance of about 40 feet.

LPC's insurer, Sentry Insurance Company, retained the law firm of Robins, Zelle, Larson & Kaplan ("RZL & K") to evaluate potential liability. RZL & K assigned investigator Michael Herring and electrical engineer Mac Martin to investigate the cause of the fire. As part of the investigation, Martin removed an exhaust motor and fan from the fire site to Atlanta, Georgia; Herring relocated about half the remaining evidence to RZL & K's Minneapolis warehouse and the other half to a rented Stor-A-Lot warehouse in Litchfield, Minnesota.

After numerous requests to view the evidence removed from the site were denied by Herring and RZL & K, Schroeder, accompanied by Herring, made a visual inspection of the evidence in the Stor-A-Lot warehouse on April 15, 1986. On that day, Schroeder did not view the exhaust fan and motor nor the evidence in the RZL & K warehouse. RZL & K assured Schroeder he would have access to the remaining evidence once the fan and motor were returned from Atlanta. By letter dated June 12, 1986, Schroeder informed Federated of RZL & K's assurances. Federated notified LPC on October 1, 1986, of its intent to pursue subrogation claims against LPC on bailment or negligence theories. In response, LPC denied liability for IG's loss in the fire.

The items in the Stor-A-Lot warehouse were discarded, although the parties dispute the circumstances surrounding this event. Federated asserts this evidence was discarded sometime in mid-October 1986 by LPC employee Eugene Genin and that RZL & K did not notify Federated of this fact until February 5, 1987. RZL & K contends it was not aware the evidence was discarded until sometime after mid-October 1986. Genin maintains Herring told him he was finished with the items, which Herring denies, and that Herring did not tell him other parties would be examining the

items, thus Genin inferred it was appropriate to discard the evidence.

After examining the evidence stored at RZL & K's warehouse, Schroeder determined none of those items caused the fire. RZL & K maintains Federated did not test these items. Schroeder concluded "the fire evolved from the area below the exhaust fan and motor. That space was occupied by two polypropylene tubs," which were part of the discarded evidence. He further opined "if the subject tubs had been retained by the Defendants, Federated would have had a reasonable probability of successfully achieving a subrogation recovery." Thus believing its subrogation claim was nullified, Federated filed a civil action against RZL & K and LPC on grounds of negligence; intentional or negligent spoliation of evidence; and intentional interference with a prospective business advantage (a successful subrogation recovery). Federated has not pursued its subrogation claim to date.

On May 25, 1989, the parties stipulated to stay further discovery pending the trial court's ruling on motions by RZL & K and LPC to dismiss for failure to state a claim upon which relief can be granted or for summary judgment. By order dated July 28, 1989, the trial court denied these motions. On December 6, 1989, upon motion by RZL & K, the trial court filed an amended order certifying three questions of law regarding the spoliation tort as important and doubtful. RZL & K and LPC subsequently filed notices of appeal, which were consolidated by the Minnesota Court of Appeals. We accepted jurisdiction on January 31, 1990, and briefing and oral argument were scheduled.

## II.

Federated alleges its subrogation action against LPC was nullified when the evidence in the Stor–A–Lot warehouse was discarded and requests this court create tort liability for the spoliation. Spoliation generally is "[t]he destruction of evidence. It constitutes an obstruction of justice." *Black's Law Dictionary* 1257 (5th ed. 1979). One court defined spoliation for purposes of a new tort as the "failure to preserve property for another's use as evidence in pending or future litigation." *County of Solano Owens v. Delancy*, 264 Cal.Rptr. 721, 724 n. 4 (Cal.Ct.App.1989). Since tort liability has never been imposed in this jurisdiction for evidence destruction, this is a legal issue of first impression that we review de novo. *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.*, 260 N.W.2d 579, 582 (Minn.1977). We also employ the following standards of review regarding the trial court's order denying appellants' motions: "whether the complaint sets forth a legally sufficient claim for relief," *Elzie v. Commissioner of Public Safety*, 298 N.W.2d 29, 32 (Minn.1980) (motion to dismiss), and "whether there are any genuine issues of material fact and whether the trial court erred in its application of the law," *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989) (summary judgment).

■ Courts have long afforded redress for the destruction of evidence and arguably these remedies adequately address the problem. For example, an action for negligent spoliation could be stated under existing negligence law without creating a new tort. *E.g., Pirocchi v. Liberty Mut. Ins. Co.*, 365 F.Supp. 277, 281–82 (E.D.Pa.1973); *Bondu v. Gurvich*, 473 So.2d 1307, 1312–13 (Fla.Dist.Ct.App.1984), *cert. denied*, 484 So.2d 7 (Fla.1986); *Coley v. Arnot Ogden Memorial Hosp.*, 107 A.D.2d 67, 68–69, 485 N.Y.S.2d 876, 878 (N.Y.App.Div.1985). Federated, in fact, framed one of its causes of action as such. Indeed, California appears to be the only jurisdiction to recognize an independent tort "for negligent destruction of evidence needed for prospective civil litigation." *Velasco v. Commercial Bldg. Maintenance Co.*, 169 Cal. App.3d 874, 877, 215 Cal.Rptr. 504, 506 (Cal.Ct.App.1985).

■ Minnesota, like most jurisdictions, permits "an unfavorable inference to be drawn from failure to produce evidence in the possession and under the control of a party to litigation." *Kmetz v. Johnson*, 261 Minn. 395, 401, 113 N.W.2d 96, 100 (1962); *see also* 2 J. Wigmore, *Wigmore on*

*Evidence* § 291 (Chadbourn rev. 1979). The jury then may infer "the evidence, if produced, would have been unfavorable to that party." 4 Minn.Dist. Judges Ass'n, *Minnesota Practice*, JIG 25 (3d ed. 1986). Discovery and criminal sanctions also may be applicable. *See* Minn.R.Civ.P. 37.01 and 37.02 (failure to comply with order compelling discovery); Minn.Stat. § 609.63, subd. 1(7) (1988) (intentional destruction of evidence). Further, destroying or obstructing access to evidence could subject an attorney to professional discipline. *See* Minn.R. Prof.Conduct 3.4(a). The fact, however, that other remedies exist does not necessarily preclude us from creating a new tort for further redress. *See Christianson v. Olson*, 191 Minn. 166, 168, 253 N.W. 661, 662 (1934) (statutory remedy not exclusive).

To date, only Alaska and California have specifically recognized an independent spoliation tort, aside from ordinary negligence claims. *E.g., Hazen v. Municipality of Anchorage*, 718 P.2d 456, 463 (Alaska 1986) (intentional); *Velasco*, 169 Cal.App.3d at 877, 215 Cal.Rptr. at 506 (negligent); *Smith v. Superior Court*, 151 Cal.App.3d 491, 502, 198 Cal.Rptr. 829, 837 (Cal.Ct. App.1984) (intentional in products liability cases); *cf. Wilson v. Beloit Corp.*, 869 F.2d 1162, 1164 (8th Cir.1989) (employee's claim of intentional or negligent loss of evidence not barred by exclusive remedy provision of workers' compensation act), *on remand*, 725 F.Supp. 1056, 1058 (W.D.Ark.1989) (summary judgment granted because employer had no duty to preserve evidence). Several jurisdictions have declined to adopt this tort either as a matter of law or on the facts of the case. *E.g., La Raia v. Superior Court*, 150 Ariz. 118, 121, 722 P.2d 286, 289 (1986); *Gardner v. Blackston*, 185 Ga. App. 754, 755, 365 S.E.2d 545, 546 (Ga.Ct. App.1988); *Petrik v. Monarch Printing Corp.*, 150 Ill.App.3d 248, 262, 103 Ill.Dec. 774, 783, 501 N.E.2d 1312, 1321 (Ill.App. Ct.), *appeal denied*, 114 Ill.2d 556, 108 Ill.Dec. 424, 508 N.E.2d 735 (1987); *Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 215, 734 P.2d 1177, 1183 (1987); *Miller v. Montgomery County*, 64 Md.App. 202, 214, 494 A.2d 761, 767–68 (Md.Ct.Spec. App.), *cert denied*, 304 Md. 299, 498 A.2d 1185 (1985); *Panich v. Iron Wood Prods. Corp.*, 179 Mich.App. 136, 142–43, 445 N.W.2d 795, 798–99 (Mich.Ct.App.1989).

### III.

The rationale for this new tort is that a *potential* civil action is deemed an interest worthy of legal protection from undue interference. *See, e.g., Hazen*, 718 P.2d at 464 (destruction of arrest tape interfered with plaintiff's false arrest and malicious prosecution actions); *Smith*, 151 Cal. App.3d at 503, 198 Cal.Rptr. at 837 (plaintiff's personal injury suit significantly prejudiced by destroyed evidence). We are troubled, however, by the speculative posture of this case at this juncture, noting "the threat of future harm, not yet realized, will not satisfy the damage requirement." *Reliance Ins. Co. v. Arneson*, 322 N.W.2d 604, 607 (Minn.1982). Further, "mere negligence 'in the air' is not a tort and does not become actionable until the force of the wrongful conduct impinges on a person." *Uppgren v. Executive Aviation Servs., Inc.*, 304 F.Supp. 165, 167 (D.Minn.1969).

 Although Federated notified LPC of its intent to seek subrogation based on bailment and negligence theories, these claims have not been pursued. Instead, Federated filed this action alleging as injury a destroyed subrogation recovery. "Bailment is the legal relation arising upon delivery of goods without transference of ownership under an express or implied agreement that the goods be returned." *Wallinga v. Johnson*, 269 Minn. 436, 438, 131 N.W.2d 216, 218 (1964). Once a prima facie bailment has been established, a bailee (i.e., LPC) has the burden of going forward with evidence in proving it was not negligent. *Milwaukee Auto. Mut. Ins. Co. v. Hansord Pontiac Co.*, 271 Minn. 567, 570–71, 136 N.W.2d 381, 383 (1965). As an agent of LPC and custodian of the evidence, RZL & K could be joined in a bailment action. While Federated asserts its subrogation claim was completely nullified when the fire evidence was discarded, Federated may well have recovered on this claim using this burden of proof shift, the

remaining evidence and the adverse inference arising from the destruction.

Speculation is a prime concern in the context of a spoliation claim because:

> it is impossible to know what the destroyed evidence would have shown. * * * It would seem to be sheer guesswork, even presuming that the destroyed evidence went against the spoliator, to calculate what it would have contributed to the plaintiff's success on the merits of the underlying lawsuit. Given that plaintiff has lost the lawsuit without the spoliated evidence, it does not follow that he would have won it with the evidence. The lost evidence may have concerned a relevant, but relatively trivial matter. If evidence would not have helped to establish plaintiff's case an award of damages for its destruction would work a windfall for the plaintiff.

*Petrik*, 150 Ill.App.3d at 260–61, 103 Ill. Dec. at 782, 501 N.E.2d at 1320. Accordingly, Florida and Illinois require prior resolution of the underlying claim to demonstrate actual injury. *See Bondu*, 473 So.2d at 1311 (reversed judgment on pleadings against plaintiff because new action for negligent loss of medical records "ripened" after summary judgment entered against her on medical malpractice claims); *Fox v. Cohen*, 84 Ill.App.3d 744, 751, 40 Ill.Dec. 477, 482, 406 N.E.2d 178, 183 (Ill.App.Ct. 1980) (dismissal of negligence claim for destruction of evidence affirmed because medical malpractice action still pending, so "plaintiff has not yet sustained any injury").

Other jurisdictions have allowed a spoliation claim to be brought prior to or simultaneously with resolution of the underlying claim. *E.g., Hazen*, 718 P.2d at 459; *Smith*, 151 Cal.App.3d at 502, 198 Cal.Rptr. at 837. While troubled by the speculative nature of the injury, the *Smith* court stressed the "*'tort itself* is of such a nature as to preclude the ascertainment of the amount of damages with certainty.'" *Id.* at 500, 198 Cal.Rptr. at 835 (citation omitted; emphasis in original). This rationale may be flawed because the issue is proof of the existence, not merely the ex-

tent, of an injury. The *Smith* court also was persuaded by the following reasons for not requiring prior resolution of the underlying claim: "needless duplication of effort, two trials involving much the same evidence, time and expense imposed on litigants and the judicial system, and a jury uniquely equipped to determine how the Smiths were harmed." *Id.* at 503, 198 Cal. Rptr. at 837. Unfortunately, such duplication may not be completely avoidable.

Analogously, a plaintiff must prove four elements in a legal malpractice action: "(1) that an attorney-client relationship existed; (2) that defendant acted negligently or in breach of contract; (3) that such acts were the proximate cause of the plaintiffs' damages; (4) that *but for* defendant's conduct the plaintiffs would have been successful in the" underlying claim. *Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 692 (Minn.1980) (emphasis added); *see also Godbout v. Norton*, 262 N.W.2d 374, 376 (Minn.1977) ("failure of proof as to any one of the enumerated [malpractice] elements defeats recovery"), *cert. denied*, 437 U.S. 901, 98 S.Ct. 3086, 57 L.Ed.2d 1131 (1978). This "but for" element in effect entails a "mini-trial" on the underlying action to establish causation and damages, which similarly would be necessary in a spoliation action.

The trial court was concerned that a prior resolution requirement would foreclose a plaintiff's recovery based on collateral estoppel and res judicata. *See, e.g., Smith*, 151 Cal.App.3d at 498, 198 Cal.Rptr. at 834.

> The application of collateral estoppel is appropriate where: (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn.1982). Collateral estoppel likely would not be implicated in a later adjudication of the spoliation action by Federated because the issues would be different. For example, the sub-

rogation claim would involve determination of whether LPC breached a duty of care in its use of IG's equipment, whereas the spoliation action raises the issue of whether LPC or RZL & K breached a duty to preserve evidence from the fire.

Res judicata (claim preclusion) essentially is a finality doctrine whereby "a final judgment on the merits bars a second suit for the same claim by parties or their privies." *Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 902 (Minn.1984). The *Bondu* court analyzed the effect of res judicata in this context and held:

> The intervention of this summary judgment [on her malpractice action] furnished a new basis for Mrs. Bondu's ["spoliation"] claim and makes the doctrine of res judicata inapplicable to her new action. * * * When other facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the respective parties, the issues are no longer the same and the former judgment cannot be pleaded in bar of the second action.

473 So.2d at 1311 (footnote, citation and emphasis omitted). Arguably, res judicata would not apply here either because the claims and defenses to Federated's subrogation action would be different from those raised in a spoliation action. *Cf. Restatement (Second) of Torts* § 766 comment v (1977) (breach of contract judgment will not bar "intentional interference with contract" tort action as long as judgment is not satisfied).

■■■■ The trial court acknowledged a spoliation recovery by Federated would be a windfall if its underlying claim was meritless, yet concluded "the most elementary conceptions of justice and public policy require that a wrongdoer bear the risk of the uncertainty which his own wrong has created." Undoubtedly, the destruction of evidence, especially intentional, should not be condoned because it "violates the spirit of liberal discovery [and] manifests a shocking disregard for orderly judicial procedures and offends traditional notions of fair play." *Petrik*, 150 Ill.App.3d at 259, 103 Ill.Dec. at 782, 501 N.E.2d at 1319.

Despite these laudable policies, we believe resolution of a plaintiff's underlying claim is necessary to demonstrate actual harm and prevent speculative recovery in a spoliation action. Similarly, Federated's causes of action for negligence and intentional interference with prospective business advantage are premature at this juncture because they too are based on speculative harm.

"Issues which have no existence other than in the realm of future possibility are purely hypothetical and are not justiciable." *Lee v. Delmont*, 228 Minn. 101, 110, 36 N.W.2d 530, 537 (1949). Thus, even if we were disposed to create a cause of action in tort for spoliation, this case is premature for such a determination. *Cf. Partnership Invs. of Minn., Inc. v. Lybeck*, 309 Minn. 128, 133, 243 N.W.2d 150, 153 (1976); *Carlson–Lang Realty Co. v. City of Windom*, 307 Minn. 368, 374, 240 N.W.2d 517, 521 (1976) (action challenging assessment "will accrue, if at all, only when the new system is constructed and appellant actually loses customers"). Discovery should be completed and the underlying claims adjudicated.

Given the lack of precedent in Minnesota for a spoliation tort and the posture of this case, the trial court should have granted appellants' motions. Creating a new tort is a function properly reserved for the supreme court based upon appropriate facts and record. Because this matter is prematurely before us, we answer the three certified questions in the negative.

Certified questions answered.

Reversed and remanded.

SIMONETT, Justice (dissenting in part).

I would answer the third question "no." In other words, as the majority opinion also concludes, plaintiff has failed to show any cognizable subrogation injury. To show an injury, it may or may not be necessary, in my view, to resolve first the underlying claim in litigation; it is enough to say here there has been no injury, at least not yet.

I would decline to answer the first two questions which ask whether this state recognizes either intentional or negligent spo-

liation. On the pleadings and this record, it is an idle academic enterprise to discuss these purported causes of action. In other words, the first two certified questions ask essentially for advisory opinions.

The majority opinion tells the trial court on remand to grant defendants' motions for summary judgment and judgment on the pleadings. I think we should leave to the trial judge what to do with the motions. The trial court might decide to dismiss the spoliation claims without prejudice, thereby leaving open the questions here presented for another day. Nothing I say here should be construed as recognition of a cause of action for spoliation, which is a subject which can be decided on another occasion if need be.

YETKA, Justice (dissenting in part).

I join in the dissent of Justice Simonett.

COYNE, Justice (dissenting in part).

I join in the dissent of Justice Simonett.