Hines, Geraldine S., J.
This action arose out of a car accident which caused serious injuries to Allen E. Bagg (“Allen”) and Noreen Marsters (“Marsters"). The accident occurred when the Ford Explorer in which they were riding was struck from behind by Daniel Valente’s (“Valente”) car. In addition to their product liability 'claims against Ford, Allen and his wife, Stephanie Bagg (collectively, “Baggs”) filed the following claims against The Hanover Insurance Group, Inc. (“Hanover”) after Hanover approved destruction of the Explorer despite an agreement between the parties to preserve the Explorer: (1) breach of contract (Count XXXV); (2) promissoiy estoppel (Count XXXVI); and (3) violation of G.L.c. 93A (Count XXXVII). These claims are now before the court on Hanover’s motion for summary judgment. For the reasons that follow, the motion is ALLOWED in part and DENIED in part.
BACKGROUND
The court reviews the evidence in the light most favorable to the nonmoving party. It does not, however, weigh evidence, assess credibility, or find facts. See Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982). The relevant undisputed facts are summarized as follows. In the early morning hours of June 29, 2003, Allen was driving his Ford Explorer on Route 28 in Cotuit, Massachusetts with Marsters as a passenger. Valente, driving an Audi sedan at a high rate of speed, struck the Explorer from behind. The collision caused the passenger seats to collapse and punctured the fuel tank of the Explorer, which burst into flames immediately. The Explorer rolled onto its side and struck a tree, ejecting Marsters from and trapping Allen in the burning vehicle. As a result of the collision, Allen suffered disfiguring burns over one-third of his body and the amputation of his left leg. Hanover, which had issued an automobile insurance policy to the Baggs for the period of August 2, 2002 to August 2, 2003, obtained title to the Explorer after the collision and moved it to a storage facility.
Immediately after the collision, the Baggs’ attorney (“Attorney”) began an investigation into whether Allen’s injuries may have been caused by defects in the Explorer. Accordingly, he notified Hanover in writing that the Explorer should be considered evidence in the Baggs’ future lawsuit against Ford Motor Company (“Ford”). He stated that “the vehicle must be *281 preserved in its present condition and not salvaged or altered in any way until such time as our representatives have had an opportunity to view, photograph and perform such tests as may be necessary.” A claim representative from Hanover promised to preserve the Explorer in accordance with the instructions of the Attorney, who in turn agreed to be responsible for the preservation and storage charges.
During preservation and storage, Hanover retained sole possession, custody, and control over the Explorer. It required the Attorney to obtain its written permission before any inspection of the vehicle. On September 10, 2003, the Attorney, together with Marsters’ attorney, inspected the Explorer. After that inspection, the Attorney informed the storage facility operator that he would return with an expert for a further inspection. The Attorney kept Hanover informed regarding the expert’s availability to inspect the Explorer. Before such inspection could be conducted, however, Hanover approved the destruction of the Explorer on September 17,2003, without notifying the Baggs, the Attorney, or anyone else.
The Baggs filed their products liability lawsuit against Ford in June 2005 (“Ford litigation”). On June 23, 2009, the court allowed the Baggs to amend their complaint to add the above-listed claims against Hanover. On April 1, 2010, the court allowed the Baggs’ motion to bifurcate their claims against Hanover and those against Ford. Trial in the Ford litigation began on April 28, 2010 and ended with a verdict for Ford.
DISCUSSION
I. Summary Judgment Standard
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively showing that there is no triable issue of fact. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. See Kourouvacilis, 410 Mass. at 716. Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, 404 Mass. at 17.
II. Analysis
Massachusetts law does not recognize a tort for spoliation of evidence. See Gath v. M/A-COM, Inc., 440 Mass. 482, 498 (2003). While a nonparty has no duty to preserve evidence for others to use, the Supreme Judicial Court has recognized that “[a] third-party ... may . . . agree to preserve an item of evidence and thereby enter into an enforceable contract.” Fletcher v. Dorchester Mut. Ins. Co., 437 Mass. 544, 548-49 (2002), citing Koplin v. Rosel Well Perforators, Inc., 241 Kan. 206, 208, 215 (1987). If the third party fails to preserve the evidence as promised, the remedy lies in contract law, not tort law. Id. at 549. Based on Fletcher, the Baggs filed contract-based claims against Hanover for the latter’s failure to preserve the Explorer involved in the Ford litigation.
Hanover does not dispute either the existence or breach of its agreement to preserve the Explorer. Rather, Hanover urges summary judgment in its favor relying on its assertion that plaintiffs cannot overcome factual and legal impediments to proof of the damages alleged to have been caused by the destruction of the Explorer. More specifically, Hanover challenges the plaintiffs’ ability to prove the following categories of damages: (1) the fair settlement value or jury potential of the Baggs’ claims in the Ford litigation; (2) attorneys fees and costs expended in the Ford litigation associated with (a) the unavailability of the Explorer; (b) arguing against Ford’s defenses regarding Hanover’s conduct; and (c) defending against Ford’s motions based upon Hanover’s conduct; (3) attorneys fees and costs expended in the Ford litigation; and (4) attorneys fees and costs expended in the spoliation suit against Hanover. In assessing the merits of Hanover’s challenge, I apply the long-established rule for measuring damages in breach of contract cases. Such damages must be tailored to the “loss actually sustained ... [A party] may not insist upon extraordinary or unforeseen elements of damage, but only so much as flow according to common understanding as the natural and probable consequences of the breach and such as may be presumed to have been in the contemplation of the parties at the time the contract was made.” Pierce v. Clark, 66 App.Ct. 912, 914 (2006), quoting Boylston Hous. Corp. v. O’Toole, 321 Mass. 538, 562 (1947). In other words, the claimed damage must be causally related to the breach of the contract.
A. The Fair Settlement Value of the Baggs’ Claims in the Ford Litigation
Putting aside the practical issues[3] in proving the fair settlement value of the Ford litigation, I address Hanover’s contention that this element of damage is barred by the doctrine of judicial estoppel. “Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding.” See Blanchette v. School Comm. of Westwood, 427 Mass. 176, 184 (1998). This doctrine is designed to bar litigants from manipulating the judicial process. See Canavan’s Case, 432 Mass. 304, 308 (2000). Although the circumstances to which *282 judicial estoppel properly may be applied are not reducible to any general formulation or principle, the fundamental elements comprising the core of a judicial estoppel claim are that: (1) a litigant has asserted a position that is directly inconsistent with, i.e., mutually exclusive of, the litigant’s position in a prior proceeding; and (2) the litigant succeeded in the prior proceeding in convincing the court to accept its position. See Otis v. Arbella Mut Ins. Co., 443 Mass. 634, 640-41 (2005). Both of those elements are present here.
To defeat summaiy judgment, the Baggs now take a position on spoliation diametrically opposed to that asserted in the Ford litigation. They now say that they were harmed because their “claims against Ford were significantly prejudiced by the destruction of physical evidence.” Plaintiffs’ Memorandum in Opposition to Defendant, The Hanover Insurance Group, Inc.’s Motion for Summaiy Judgment (“Opposition Memorandum”) at 10. They claim that they “will introduce expert testimony to prove that the inability to perform physical inspections foreseeably harmed the ability of Bagg to prove his underlying claims,” and that “the strength of their case was significantly weakened by Hanover’s breach and that Hanover’s wrongful conduct deprived them of a realistic chance of obtaining recovery through settlement or juiy trial.” Opposition Memorandum at 10-11, 12.
In contrast, the Baggs vigorously and successfully asserted in the Ford litigation that the destruction of the Explorer did not impair or limit their ability to prove that the vehicle was defective. They prevailed on a series of spoliation-based challenges to the viability of their negligence claims. The court denied Ford’s motion for partial summary judgment in large part because of the Baggs’ argument that Ford’s claims about the effect of the missing vehicle were purely speculative. In addition, the Baggs prevailed on their own “Motion in Limine to Exclude Testimony, Evidence, or Argument Concerning Speculation by Ford’s Experts that Inspection of the Explorer Would Enhance their Opinion Testimony” (“Motion in Limine”) which essentially removed the spoliation issue from Ford’s defense arsenal. In this motion, the Baggs noted that one of Ford’s experts, Edward Caulfield (“Caulfield”), testified repeatedly in his deposition that if he had inspected the Explorer, he could prove with certainty that the car’s fuel tank was punctured by objects from Valente’s car, meaning the Explorer’s fuel tank was not defective. The Baggs requested that the court prevent any of Ford’s experts from testifying in such a manner because it was “purely speculative.” Motion in Limine at 2. Such speculation could not properly form the basis of the experts’ opinions where, according to the Baggs,
[T]he subject of an expert’s testimony must be “scientific . .. knowledge.” The adjective “scientific” implies a grounding in the methods and procedures of science. Similarly, the word “knowledge” connotes more than subjective belief or unsupported speculation . . . Proposed testimony must be supported by appropriate validation i.e., “good grounds,” based on what is known.
Motion in Limine at 3, quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590 (1993) (discussing Fed.R.Civ.P. 702). The Baggs further committed themselves to this position on the speculative nature of the expert opinion on spoliation by asserting the following in their Motion in Limine: (1) “Caulfield’s deposition testimony that he could prove that the Explorer was not defective if he had access to the Explorer involved in the collision is pure speculation, because he cannot make such a statement based on scientific knowledge”; (2) “Caulfield’s proposition of‘proof is based on, at best, a possibility, which is insufficient to meet the evidentiary requirements”; and (3) “An opinion expressed as a mere assertion of a possibility of a causal connection is insufficient.”
Where the Baggs previously prevailed in characterizing the expert spoliation testimony as “speculative” and unreliable, they cannot now take the position that then-proposed expert testimony in opposition to Hanover’s motion for summary judgment is non-speculaüve and reliable. Such assertions are mutually exclusive and judicial estoppel forecloses any evidence supporting this assertion. See Otis, 443 Mass. at 640-41 (first element of judicial estoppel is direct inconsistency, i.e., mutual exclusivity, of prior and current positions). Thus, the technical elements of judicial estoppel are met here.
The equitable principles behind the doctrine are also met.[4] “In deciding whether a party should be judicially estopped, [courts] look to see whether that party is seeking to use the judicial process in an inconsistent way that courts should not tolerate.” East Cambridge Sav. Bank v. Wheeler, 422 Mass. 621, 623 (1996). Here, the court cannot allow the Baggs to assert inconsistent positions in order to obtain damages that neither Ford (via settlement with the Baggs) nor the jury in the underlying litigation saw fit to give them, i.e., the Baggs are not entitled to “a second bite at the apple.” See Otis, 443 Mass. at 636-39, 642-43 (judicial estoppel appropriate where the plaintiff in first action obtained judgment against individual defendant, received assignment of defendant’s claims against others because defendant’s assets were insufficient, then sued others based on facts contrary to those he asserted in first action); see also Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004) (judicial estoppel maybe appropriate when a litigant is “playing fast and loose with the courts”).
Further, if this court allows the Baggs to proceed to trial on this element of claimed damage, it would “create! 1 the appearance that either the first court has been misled or the second court will be misled, thus raising the specter of inconsistent determinations and endangering the integrity of the judicial process.” Otis, 443 Mass. at 643, quoting Alternative Sys. Concepts, Inc., 374 F.3d at 33. Such inconsistency cannot be tolerated by the court, and the Baggs are therefore *283 judicially estopped from claiming as part of their damages in the contract action against Hanover the fair settlement value or jury potential of the Baggs’ claims in the Ford litigation.[5]
B. Attorneys Fees and Costs
The Baggs have claimed as damages various categories of attorneys fees and costs. I address each category.
First, the Baggs seek attorneys fees and costs incurred in fending off Ford’s spoliation-related challenges to their negligence claims. They assert that they would not have incurred these expenses but for Hanover’s spoliation of the Explorer. Hanover argues that the Baggs cannot assert these damages because they are not distinct from the underlying litigation. This court has found no Massachusetts case addressing the issue. Hanover, however, cites Foster v. Lawrence Memorial Hosp., 818 F.Sup. 319, 322, 325 (D.Ky. 1993). This case is inappo-site. In Foster, the plaintiffs sought as a remedy for spoliation the same damages as those asserted in their underlying medical malpractice claims. Foster, 818 F.Sup. at 325. The federal district court determined that spoliation damages may be recovered but only where the “damages... are distinct from [the] underlying claims[.]” Id. at 322. Here, the attorneys fees and costs incurred to defend the viability of the plaintiffs’ against the spoliation challenge are distinct from the damages resulting from Allen’s personal injuries (e.g., medical expenses) allegedly caused by the Explorer’s defects. The spoliation issue injected a layer of difficulty that the Baggs would not otherwise have had to address. Ford’s spoliation challenges posed a serious threat to the viability of the Baggs’ claims. These challenges compelled a sustained and thorough response from the Baggs’ counsel, quite apart from the usual liability issues. Hanover’s breach caused loss to the Baggs and, therefore, they are entitled to a trial to determine the damages caused by the expenditure of attorneys fees and costs related to the spoliation issue.[6]
Second, the plaintiffs seek to recover their attorneys fees in the underlying Ford litigation. The undisputed facts do not establish any connection between Hanover’s spoliation of the Explorer and the attorneys fees and costs in the Ford litigation. The plaintiffs would have been obligated to incur these expenses regardless of Hanover’s conduct. This claimed element of damage does not “flow according to common understanding as [a] natural and probable consequence of the breach.” Pierce, 66 Mass.App.Ct. at 914. Thus, summaiyjudgmentmust be granted to Hanover on the plaintiffs’ claim for attorneys fees and costs incurred in the Ford litigation.
Finally, the Baggs seek attorneys fees and costs incurred in the prosecution of their spoliation-related contract claims against Hanover. In this regard, the Baggs are in the same position as any other litigant suing for breach of contract. The costs associated with this litigation are not damages in the sense defined by the court in Pierce, supra. I follow the approach suggested in Millenium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 646 (2010), which allowed attorneys fees for defending an abuse of process action but not for prosecuting counterclaims.
Furthermore, Massachusetts courts follow the “American Rule” which allocates the costs of litigation to the parties except when allowed by a statute[7] or an agreement or contract between the parties. Waldman v. American Honda Motor Co, Inc., 413 Mass. 320, 321 (1992). This court has not been directed to any statute applicable to this case. Nor do the Baggs suggest that the agreement with Hanover contemplated fees and costs as an element of damages. Therefore, Hanover’s motion for summary judgment on this element of the damages claim must be allowed.
ORDER
For the foregoing reasons, it is hereby ORDERED that Hanover’s motion for summary judgment be ALLOWED as follows: (a) the settlement value of the underlying litigation against Ford; (b) the attorneys fees and costs incurred in the Ford litigation; and (c) attorneys fees and costs incurred in bringing this action for breach of contract against Hanover. Hanover’s motion for summary judgment is DENIED as to the plaintiffs’ claim for attorneys fees and costs reasonably attributed to their defense to Ford’s pretrial spoliation challenges. Plaintiffs are entitled to a trial on this element of their claimed damage.

I refer here to the issues of proof raised by the court in Fletcher, supra at 551.

This court does not attribute any lack of integrity to the plaintiffs or their counsel. The attorneys are merely following the dictates of vigorous advocacy for plaintiffs who suffered horrific and life-changing injuries. Nonetheless, the application of judicial estoppel principles is appropriate in the circumstances of this case.

It would be entirely unfair to Hanover to award the settlement value or jury potential of the Baggs’ underlying claims against Ford where such damages could be a windfall for the Baggs given that “it is impossible to know what the destroyed evidence would have shown ... It would seem to be sheer guess-work, even presuming that the destroyed evidence went against [Ford], to calculate what it would have contributed to the [Baggs’] success on the merits of the underlying lawsuit.” Federated Mut Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 438 (Minn. 1990) (citation omitted). Unfair advantage to the party asserting the inconsistent position or unfair detriment to the other party is a factor some courts also consider in determining whether to applyjudicial estoppel. See Otis, 443 Mass. at 641.

Obviously, the trial would involve only those fees and costs related to the spoliation issue.

See e.g., G.L.c. 21E, §15; G.L.c. 93A, §§9, 11; G.L.c. 151B, G.L.c. 231, §6F.