KALAN D. RODGERS, SR., Adm'r of the Estate of Brenda Marie Rodgers, Deceased, Plaintiff-Appellant, v. ST. MARY'S HOSPITAL OF DECATUR, Defendant-Appellee.

Fourth District   No. 4—89—0721

Opinion filed June 29, 1990.—Rehearing denied July 27, 1990.

Robert M. Owen, of Popkin, Stern & Owen, of Decatur, and Charles H. Fendell, of Popkin & Stern, of St. Louis, Missouri, for appellant.

Graham & Graham, of Springfield (Richard J. Wilderson, of counsel), for appellee.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

The plaintiff, Kalan D. Rodgers, Sr. (Rodgers), appeals the dismissal with prejudice of his amended complaint directed to defendant St. Mary's Hospital (St. Mary's), in which he requested damages on the basis of St. Mary's alleged failure to preserve X rays relevant to a medical malpractice suit. The principal issues which we must resolve in this appeal are whether there is a cause of action for loss or destruction of X rays which results in prejudice to litigation rights and, if so, the effect of post-judgment settlements and failures to pursue all rights of appeal with respect to adverse verdicts on a party's right to maintain an action for failure to preserve X rays.

The origin of this litigation was a medical malpractice suit which Rodgers filed on May 27, 1986, in his capacity as administrator of the estate of his late wife, Brenda Marie Rodgers (Brenda), against St.

Mary's, and the obstetricians and radiologists responsible for the care of Brenda during the days immediately prior to her death. Rodgers alleged, and the evidence presented at trial established, Brenda died on June 14, 1984, as a result of complications which developed after the cesarean section delivery of her and Rodgers' son on June 12, 1984. The circuit court entered summary judgment in favor of St. Mary's on September 10, 1987, subsequently vacated this judgment, and entered a second summary judgment in favor of St. Mary's on May 13, 1988. On June 10, 1988, a jury returned a verdict in favor of the radiologists and against Rodgers. However, the jury found in favor of Rodgers on his claims against the obstetricians and assessed his damages at $1,200,000. Judgment was entered on this verdict, and the obstetricians' post-trial motion was denied.

On August 29, 1988, the obstetricians filed a notice of appeal from the judgment in Rodgers' favor. During the pendency of this appeal, Rodgers, acting against the advice of his attorneys, settled Brenda's estate's claims against the obstetricians for $800,000, after obtaining permission of the probate division of the circuit court to do so. The obstetricians' appeal was dismissed per stipulation of the parties on May 24, 1989. Rodgers did not appeal the judgments in favor of St. Mary's and the radiologists.

In the meantime, Rodgers had filed the present action against St. Mary's Hospital on September 27, 1987. He requested damages based on the hospital's alleged loss of all abdominal X rays of Brenda within five years after they were taken. Rodgers alleged (1) this breached a statutory duty (Ill. Rev. Stat. 1987, ch. 111½, par. 157—11) which the hospital owed to Brenda and her successors in interest and (2) the X rays were crucial to his proving his case against the physicians responsible for treating Brenda during the days immediately before her death. On April 12, 1988, the circuit court dismissed this complaint without prejudice and with leave to amend.

In an amended complaint filed May 25, 1989, Rodgers alleged the salient facts pertaining to Brenda's hospitalization and death at St. Mary's, including the taking of X rays of various portions of Brenda's body during her hospitalization. Rodgers alleged a sigmoid colonic volvulus was or should have been depicted on certain of the X rays, and St. Mary's owed Brenda and her successors in interest a statutory duty (Ill. Rev. Stat. 1987, ch. 111½, par. 157—11), as well as a duty pursuant to its internal regulations, to retain the X rays or diagnostic-quality minified versions thereof for a period of five years. Rodgers alleged St. Mary's breached this duty by destroying the X rays and failing to retain diagnostic-quality minified versions of them.

Rodgers further alleged the missing X rays were critical and important evidence which, either alone or in combination with other evidence, would have established the radiologists' negligence in treating Brenda, which was a proximate cause of her death. Rodgers alleged that as a result of St. Mary's breach of its duty to preserve the X rays, he lost his case against the radiologists. Rodgers also alleged that if the X rays had been preserved, a verdict would have been returned in his favor against the radiologists and the obstetricians jointly and severally, and the judgment entered on that verdict would have been paid and not appealed. Rodgers asserted the loss of the X rays forced him to forego $400,000 of the verdict which was returned at the conclusion of the trial of his claims against the radiologists and the obstetricians. He requested damages in the amount of $400,000.

In an order entered August 15, 1989, the circuit court allowed St. Mary's motion to dismiss Rodgers' second-amended complaint with prejudice. In this order, the circuit court acknowledged the existence of the tort of spoliation of evidence and held (1) Rodgers' spoliation of evidence suit is not barred by the *res judicata* effect of the summary judgment in favor of St. Mary's in his medical malpractice action, (2) Rodgers' spoliation of evidence action is not governed or barred by the statute of limitations applicable to his medical malpractice claims against St. Mary's, (3) Rodgers' spoliation of evidence action is not subject to dismissal for want of prosecution, (4) Rodgers' spoliation of evidence action is not subject to dismissal by reason of his failure to attach to his complaint a healing art malpractice action affidavit (Ill. Rev. Stat. 1987, ch. 110, par. 2—622), and (5) Rodgers' post-judgment compromise and settlement with the obstetricians and his failure to appeal the judgment in favor of the radiologists defeats and bars his action against St. Mary's for spoliation of evidence. The circuit court denied Rodgers' motion for reconsideration of this order.

The first issue we must decide is whether there is under Illinois law a cause of action for spoliation of evidence. Rodgers contends the circuit court properly concluded the tort of spoliation of evidence is recognized in Illinois, and the tort consists of violation of a duty owed a party entitled to the benefit of unavailable evidence.

St. Mary's argues Illinois has not recognized the existence of such a tort, and at best Illinois cases "merely indicate acknowledgment of the concept." St. Mary's further asserts this tort is not recognized in many States.

Two Illinois decisions—*Fox v. Cohen* (1980), 84 Ill. App. 3d 744, 406 N.E.2d 178, and *Petrik v. Monarch Printing Corp.* (1986), 150 Ill. App. 3d 248, 501 N.E.2d 1312—have discussed the tort of spolia-

tion of evidence. However, the *Fox* court held the plaintiff's spoliation of evidence action was premature, while in *Petrik* the plaintiff abandoned the theory of liability which the missing evidence would have supported. Thus, in neither of these cases was there a need to squarely decide whether the tort of spoliation of evidence should be recognized in Illinois. In the present case, we likewise need not decide whether a wide-ranging common law spoliation of evidence tort should be recognized, for we conclude Rodgers' amended complaint properly states a statutory cause of action.

■ "An Act concerning the retention for use in litigation of X ray or roentgen films of the human anatomy" provides:

> "Hospitals which produce photographs of the human anatomy by the X-ray or roentgen process on the request of licensed physicians for use by them in the diagnosis or treatment of a patient's illness or condition shall retain such photographs or films as part of their regularly maintained records for a period of 5 years provided that retention of said photographs or film may be by microfilm or other recognized means of minification that does not adversely affect their use for diagnostic purposes. However, if the hospital has been notified in writing by an attorney at law before the expiration of the 5 year period that there is a litigation pending in court involving a particular X-ray or roentgen photograph in their records as possible evidence, and that the subject person of such photograph is his client, or is the person who has instituted such litigation against his client, then the hospital shall keep such photograph or film or minified copy thereof in its regular records until notified in writing by the plaintiff's attorney with the approval thereon of the defendant's attorney of record that the case in court involving such photograph has been concluded, or for a period of 12 years from the date that the X-ray photograph film was produced, whichever occurs first in time." (Ill. Rev. Stat. 1987, ch. 111½, par. 157—11.)

Manifestly, this statute seeks to protect the property rights of persons involved in litigation. Violation of a statute designed for the protection of human life or property is *prima facie* evidence of negligence. An injured party has a cause of action for a violation of such a statute if he or she is intended to come within the scope of the protection afforded by the statute, and his or her injury was proximately caused by a violation of the statute. (*French v. City of Springfield* (1976), 65 Ill. 2d 74, 357 N.E.2d 438; *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93.) The determination of the meaning and scope

of statutes is ordinarily a question of law for the courts to determine, while the question of proximate causation usually must be decided by the trier of fact. (See *French*, 65 Ill. 2d 74, 357 N.E.2d 438.) The *prima facie* case of negligence established by a violation of a statute may be rebutted by evidence that the defendant acted reasonably under the circumstances, despite the violation. *Davis*, 65 Ill. 2d 380, 356 N.E.2d 93; *Rowe v. Illinois Power Co.* (1987), 154 Ill. App. 3d 174, 506 N.E.2d 975.

■ Taking the well-pleaded allegations of Rodgers' amended complaint as true (*Teter v. Clemens* (1986), 112 Ill. 2d 252, 492 N.E.2d 1340; *Delano Law Offices, P.C. v. Choi* (1987), 154 Ill. App. 3d 172, 506 N.E.2d 723), the complaint states matters which establish a violation by St. Mary's of the statute pertaining to retention of X rays and which establish Rodgers is an individual within the scope of the protection afforded by that statute. Rodgers' amended complaint thus states a cause of action. Whether St. Mary's alleged breach of its duty to preserve the X rays of Brenda Rodgers proximately caused Rodgers to lose his suit against the radiologists, and whether St. Mary's actions were reasonable despite its alleged violation of the relevant statute, is for the trier of fact to determine.

The next question we must resolve is whether the present action is barred by Rodgers' post-judgment settlement with the obstetricians. Rodgers contends in holding his spoliation of evidence action is barred on this basis, the circuit court erred in concluding (1) he prevailed on the claim to which the missing X rays relate, and (2) he "gave away" part of the verdict which he obtained against the obstetricians. Rodgers asserts the circuit court apparently had the mistaken belief the missing X rays related to his claims against the obstetricians rather than the radiologists.

Rodgers also maintains one seeking damages for harm to litigation rights through loss or destruction of evidence should not be required to sue all possible defendants before suing the party responsible for the spoliation of evidence. He asserts a contrary holding would allow parties responsible for loss or destruction of evidence to escape liability by claiming the party injured by such loss or destruction should obtain relief by pursuing claims against tortfeasors with respect to which the lost or destroyed evidence is not crucial. Rodgers argues such a holding would discourage settlements and increase the amounts of damages proximately caused by spoliation of evidence.

Rodgers states if both the obstetricians and the radiologists had been found liable for Brenda Rodgers' death, under statutory and common law principles he could have effected the $800,000 settlement

with the obstetricians and collected the balance of the $1,200,000 judgment from the radiologists. Rodgers maintains St. Mary's loss of the X rays relevant to his claims against the radiologists prevented him from doing this. Rodgers further observes that if he had not settled his claims against the obstetricians for $800,000, his claim in the present action against St. Mary's might possibly have been for the entire amount of the judgment he obtained against the obstetricians—$1,200,000—rather than $400,000. Rodgers asserts because of the obstetricians' appeal (*Rodgers v. Stroyls* (4th Dist. 1989), No. 4—88—0631 (order of dismissal)), the present case is distinguishable from situations where a plaintiff settles a claim against one of several joint tortfeasors for less than the amount of an indefeasible and enforceable judgment.

St. Mary's argues that in cases such as this, the actionable injury is not the loss of evidence but the loss of the predicate lawsuit which was to have been prosecuted with the aid of the missing evidence. St. Mary's contends since any liability on the part of the radiologists was joint and several with that of the obstetricians, a verdict finding the radiologists negligent would not have increased Rodgers' $1,200,000 damages award. Consequently, argues St. Mary's, the loss of the X rays did not cause Rodgers to lose his malpractice suit. As further support for its assertion Rodgers did not lose his malpractice suit and thus sustained no damages as a result of loss or destruction of the X rays, St. Mary's observes Rodgers' action against the radiologists survived a motion for a directed verdict, and despite the absence of the X rays, Rodgers was able to produce "voluminous evidence" and an expert witness against the radiologists.

In his reply argument, Rodgers states the more joint tortfeasors who are found liable for damages in a given case, the greater the likelihood the plaintiff will recover his full damages. He asserts that when, as here, a release is given in good faith to one joint tortfeasor, the plaintiff retains a right to recover his damages, less the amount of prior settlements, from the remaining joint tortfeasors. Also, Rodgers asserts that in this appeal, which is concerned with the sufficiency of his complaint to state a cause of action, St. Mary's cannot argue the missing X rays were not crucial to his proving his case against the radiologists. Rodgers states rather, at this stage of the proceedings, his allegations concerning the materiality of the missing X rays must be regarded as true.

■ In order to determine whether Rodgers' settlement with the obstetricians bars his spoliation of evidence action, it is not necessary to determine whether this settlement released Rodgers' claims

against the radiologists. The record before this court presents a question of fact as to whether the alleged unavailability of the X rays, and Rodgers' resulting inability to obtain a verdict against the radiologists, was a proximate cause of the $400,000 in damages which Rodgers claims. The possibility these damages may have been proximately caused by the appeal of the judgment against, and the settlement of Rodgers' claims against, the obstetricians is of no consequence with regard to the question of whether Rodgers' amended complaint states a cause of action. An injury may have more than one proximate cause. (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.) The question of what proximately caused the alleged damages Rodgers claims is for the trier of fact to determine. On this record, we cannot say, as a matter of law, St. Mary's alleged failure to preserve the X rays could not have been a proximate cause of Rodgers' alleged failure to recover $400,000 of the damages to which Brenda's estate claims entitlement.

In addition to being contrary to well-established principles of the law of negligence, a rule that a post-judgment settlement bars a spoliation of evidence action in this type of situation would impede settlements of disputed claims. As Rodgers points out, if he had obtained a verdict against the radiologists, he could possibly have obtained satisfaction of that verdict before settling with the obstetricians and thus avoided any impact that settlement may have had on his claims against the radiologists. Under the rule for which St. Mary's contends, however, Rodgers' failure to obtain a verdict against the radiologists would have required postponement of his settlement with the obstetricians until after his spoliation of evidence claim was resolved. Requiring persons in Rodgers' situation to proceed in this manner would greatly impede settlements in factual settings similar to those here and often would encourage needless resort to litigation.

The sole case on which the circuit court relied in support of its conclusion the present action is barred by Rodgers' settlement with the obstetricians is *Henry v. St. John's Hospital* (1989), 180 Ill. App. 3d 558, 536 N.E.2d 221, *appeal allowed* (1989), 127 Ill. 2d 616, 545 N.E.2d 110. *Henry* is distinguishable. There, the plaintiff obtained judgments against a drug manufacturer, a hospital, and a physician. The jury fixed the manufacturer's share of compensatory damages at 93% and the hospital's and doctor's joint share at 7%. This court held that in settling with the manufacturer for less than its apportioned share of liability, the plaintiff waived her right to recover the remainder of the manufacturer's apportioned share of liability from the hospital and the physician. In the present case, by contrast, Rodgers ob-

tained a judgment against only one tortfeasor. Thus, unlike in *Henry*, there was no right to collect a judgment from one of two or more joint tortfeasors for Rodgers to waive.

For all of the above reasons, we hold that when failure to preserve medical X rays in violation of the relevant statute irreparably damages a plaintiff's litigation rights with respect to less than all of two or more alleged joint tortfeasors, a settlement with one of the tortfeasors with respect to which plaintiff's litigation rights were not damaged does not bar an action for damages based on failure to preserve the X rays.

■ Rodgers further argues the circuit court erred in holding his failure to appeal the judgment entered on the verdict in the radiologists' favor defeated and barred his spoliation of evidence suit. Rodgers points out that in the present case, the predicate claim was not against the spoliator of the evidence, but rather was directed to a third party (the radiologists) who did not have a duty to preserve the X rays. Rodgers observes an appeal of the verdict in favor of the radiologists could not have resulted in introduction into evidence of the missing X rays. Thus, argues Rodgers, an appeal of the judgment in the radiologists' favor would have served no purpose and would simply have wasted this court's time.

St. Mary's contends since Rodgers did not appeal or contest the adverse judgment entered on his claims against the radiologists, he cannot now argue he was damaged by a loss of evidence relevant to those claims. St. Mary's maintains if the absence of an X ray were a crucial factor in Rodgers losing his case against the radiologists, he should have raised the issue in a cross-appeal directed to the radiologists and raised this as an issue in response to the obstetricians' appeal.

Whether to appeal an adverse judicial decision—and whether an appeal has a reasonable chance of success—is a matter committed to the professional judgment of the losing party's attorney. As noted by Rodgers, an appeal of the judgment in the radiologists' favor could not have recreated lost or destroyed X rays. Requiring all rights of appeal in the predicate action to be exhausted before a spoliation of evidence action may proceed would, in at least some cases, require the filing of frivolous appeals for the sole purpose of preserving spoliation of evidence actions. This requirement would result in a needless waste of judicial resources, and we decline to adopt it.

We must finally decide whether Rodgers' spoliation of evidence action is barred by the doctrine of *res judicata*. St. Mary's notes the issue of the missing X rays was extensively discussed in the proceed-

ings which resulted in the circuit court entering summary judgment in its favor on Rodgers' medical malpractice claims against the hospital. St. Mary's also asserts (1) the same parties are involved in this suit as were involved in Rodgers' malpractice suit against it; (2) the damages sought in this suit are identical to the damages sought in Rodgers' malpractice action against the hospital; (3) the same evidence necessary to sustain a judgment for Rodgers in his malpractice action is necessary to sustain a judgment in his favor in this action; and (4) Rodgers' claim in this suit is derivative of his claims in the malpractice action. St. Mary's argues that in view of these asserted facts, the present suit is barred by the *res judicata* effect of the summary judgment entered in its favor with respect to Rodgers' malpractice claims.

Rodgers responds the doctrine of *res judicata* is inapplicable to this case, because the evidence necessary to establish St. Mary's breached its duty to preserve the X rays would not have sustained his healing art malpractice claims against the hospital. Rodgers states a post-death loss of X rays could not have caused Brenda Rodgers' death, and thus, the claim asserted in his malpractice action is not the same claim asserted against the hospital in the present action. Furthermore, Rodgers argues he could not have stated a spoliation of evidence action against St. Mary's before a judgment was entered in favor of the radiologists, since prior to that time he suffered no harm attributable to St. Mary's failure to preserve the X rays.

■ The doctrine of *res judicata* provides a prior judgment serves as an absolute bar to a subsequent action involving the same claim, demand, or cause of action between the same parties or their privies. For *res judicata* purposes, claims are the same when the facts and relief sought in both actions are substantially the same (*Housing Authority v. Young Men's Christian Association* (1984), 101 Ill. 2d 246, 461 N.E.2d 959), and the evidence necessary to sustain a second verdict would sustain the first verdict the plaintiff requested. In other words, claims are the same for *res judicata* purposes when they are based on a common core of operative facts. *Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 444 N.E.2d 205.

■ We find St. Mary's *res judicata* argument totally untenable. In order to prevail on his spoliation of evidence claim against St. Mary's, Rodgers will have to prove, *inter alia,* St. Mary's breached its duty to preserve the X rays of Brenda Rodgers and this, in turn, caused him to lose his lawsuit requesting damages on the basis of *negligence on the part of the radiologists*. Negligence on the part of St. Mary's in treating Brenda Rodgers will not, however, be a crucial element which Rodgers will have to establish in his spoliation of evidence

action against St. Mary's. Thus, the evidence crucial to Rodgers prevailing in his spoliation of evidence action against St. Mary's would not have sustained a verdict in his favor in his medical malpractice action against the hospital. *Ergo*, these two actions are not based on a common core of operative facts.

For the reasons stated, we reverse the circuit court order dismissing Rodgers' amended complaint seeking damages based on St. Mary's alleged failure to preserve X rays, and remand this cause to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

GREEN and STEIGMANN, JJ., concur.