Dalton EDWARDS

v.

LOUISVILLE LADDER COMPANY,
d/b/a Emerson Electric
Company.

No. 89–1697–LC.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

June 19, 1992.

William H. Goforth, Lafayette, La., for Dalton Edwards.

John E. McElligott, Jr. and Stacey L. Knight, Davidson, Meaux, Sonnier, McElligott & Swift, Lafayette, La., for Louisville Ladder Co. d/b/a Emerson Elec. Co.

L. Paul Foreman, Lake Charles, La., for Aetna Cas. & Sur. Co.

Terry Thibodeaux, Carmouche Law Firm, Lake Charles, La., for Boeing Louisiana, Inc.

## JUDGMENT

TRIMBLE, District Judge.

For the reasons stated in the Report and Recommendation of the Magistrate Judge previously filed herein and after an independent review of the record and any objections filed therein, and having determined that the findings are correct under the applicable law;

IT IS ORDERED that the motion for summary judgment on behalf of Boeing Louisiana, Inc. be and the same is hereby GRANTED dismissing the third-party complaint of Louisville Ladder Company with prejudice.

## REPORT AND RECOMMENDATION

ALONZO P. WILSON, United States Magistrate Judge.

Now before the court is a motion for summary judgment filed by Boeing Louisi-

ana, Inc. (Boeing). It has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Dalton Edwards has filed this suit alleging that a defective ladder caused him to fall while he was in the course and scope of his employment at Boeing. He further claims that Louisville Ladder Company (Louisville) bears responsibility for his injuries as the manufacturer of the ladder. Louisville has filed a third-party complaint against Boeing seeking to recover damages from Boeing including any amounts they might be found liable for to Mr. Edwards and the cost of defending Mr. Edward's suit.

The ladder involved in Mr. Edward's accident has apparently disappeared. Louisville has alleged that this disappearance was the result of Boeing either intentionally or negligently destroying or misplacing the ladder. Thus, Louisville is asserting a claim based on what commentators and other courts have referred to as negligent or intentional spoliation of evidence.

Boeing previously filed a motion for summary judgment on June 6, 1991. Neither party was able to cite any Louisiana law pertinent to the issue. In his memorandum ruling denying Boeing's first motion for summary judgment Judge Hunter stated: "summary judgment is not an appropriate mechanism for disposing of Louisville's third-party complaint at this time. This motion may be renewed at a later date." (*See* Judge Hunter's Memorandum Ruling dated August 9, 1991). Boeing filed the present motion for summary judgment on February 10, 1992. Considering the summary judgment evidence in the light most favorable to Louisville and after careful consideration this court concludes that Louisville's claims have no legal merit.

The undersigned is aware of no Louisiana jurisprudence addressing claims for negligent or intentional spoliation of evidence. According, this court's responsibility is to determine, to the best of its ability, how Louisiana's Supreme Court would rule if the issue were before it. *Ladue v. Chevron U.S.A., Inc.,* 920 F.2d 272 (5th Cir.

1991); *reh. en banc den.* 925 F.2d 1461 (5th Cir.1991).

When addressing delictual responsibility Louisiana law starts with the basic precept "that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ.Code art. 2315; *LeJeune v. Rayne Branch Hospital,* 556 So.2d 559, 566 (La. 1990); *9 To 5 Fashions, Inc. v. Spurney,* 538 So.2d 228, 231 (La.1989); *Pitre v. Opelousas General Hospital,* 530 So.2d 1151, 1156 (La.1988). "The framers conceived of fault as a breach of a preexisting obligation for which the law orders reparation, when it causes damages to another, and they left it to the courts to determine in each case the existence of an anterior obligation which would make an act constitute fault." *9 To 5 Fashions, Inc. v. Spurney, supra* at 231; *Pitre v. Opelousas General Hospital, supra* at 1156.

Thus, for torts based both in negligence and intent the court is required to make a determination of whether the law imposes an obligation on the defendant to protect the plaintiff from the type harm claimed. *9 To 5 Fashions v. Spurney, supra* at 231; *LeJeune v. Rayne Branch Hospital, supra* at 566; *Pitre v. Opelousas General Hospital, supra.* These obligations or duties are "designed to protect *some* persons under *some* circumstances against *some* risks. Malone, *Ruminations on Cause-In-Fact,* 9 Stan.L.Rev. 60 (1956); *LeJeune v. Rayne Branch Hospital, supra* at 569; *Pitre v. Opelousas General Hospital, supra* at 1155; *PPG Industries, Inc. v. Bean Dredging,* 447 So.2d 1058, 1061 (La. 1984). In determining the existence and scope of such obligations and duties policy considerations including the moral, social and economic values involved must be examined. *Pitre v. Opelousas General Hospital, supra* at 1156; *PPG Industries, Inc. v. Bean Dredging, supra* at 10061; *Entrevia v. Hood,* 427 So.2d 1146 (La.1983). Additionally, Louisiana's Supreme Court wisely considers relevant decisions from other states as a valuable resource to be used when examining the policy implications involved in expanding areas of liability. *Le-*

*Jeune v. Rayne Branch Hospital, supra* at 564; *9 To 5 Fashions v. Spurney, supra* at 231; *Pitre v. Opelousas General Hospital, supra* at 1154. This court will begin with an examination of how other jurisdictions have addressed similar claims.

Despite the fact that the origins of a tort for spoliation of evidence trace back to at least 1973 [1] no general consensus has developed as to the basis, essential elements, or even existence of such a tort. T. Fischer, *Intentional Spoliation of Evidence, Interfering with Prospective Civil Action, as Actionable*, 70 ALR 4th 984; J. Thompson, *Spoliation of Evidence: A Troubling New Tort*, 37 U.Kan.L.Rev. 563 (1989) (hereafter Thompson); L. Solum and S. Marzen, *Truth and Uncertainty: Legal Control of the Destruction of Evidence*, 36 Emory L.J. 1085 (1987).

The tort for intentional spoliation of evidence has its roots in a 1984 California Court of Appeal decision. *Smith v. Superior Court*, 151 Cal.App.3d 491, 198 Cal. Rptr. 829 (2nd Dist.1984). The plaintiff had been injured when a wheel came off of a van and crashed into the plaintiff's vehicle. Abbott Ford had customized the offending van with "deep dish mag wheels." The van was towed to Abbott Ford for repairs. Abbott Ford agreed with the plaintiff's attorney to maintain parts of the vehicle for use as evidence. Thereafter, Abbott Ford lost or destroyed the parts making it impossible for plaintiff's expert to inspect and test the parts to pinpoint the cause of failure of the wheel assembly.

The plaintiff in *Smith* alleged that Abbott Ford had intentionally and maliciously disposed of the evidence which they had promised to maintain for the plaintiff. The damage claimed was "significant prejudice" of plaintiff's opportunity to obtain compensation for her injuries. The aspect of this claim that most troubled the court in *Smith* was the uncertainty of damages. It was noted that the case had not yet gone to trial and that it was possible that the plaintiff might prevail despite the loss of evidence. The court overcame this obstacle by analogizing the claim to one for intentional interference with a prospective business advantage concluding that a "prospective civil action in a product liability case is a valuable 'probable expectancy' that the court must protect from the kind of interference alleged." 198 Cal.Rptr. at 837.

Alaska joined California in recognizing the tort of intentional spoliation of evidence in *Hazen v. Anchorage*, 718 P.2d 456 (Alaska 1986). In *Hazen* the plaintiff was arrested for prostitution after an undercover officer taped a meeting with the plaintiff. Criminal charges were dropped and the plaintiff brought a civil suit for malicious prosecution and false arrest. At the time the criminal charges were dismissed the plaintiff's attorney's, anticipating the civil litigation, asked that the arrest tape be preserved. Later the tape became inaudible and plaintiff alleged that exculpatory material had been intentionally edited from the tape. Relying on the *Smith* case, the court held that the plaintiff had a cause of action for intentional interference with a prospective civil action by spoliation of evidence.

In both *Smith* and *Hazen* it was claimed that the plaintiff dishonored a promise to the plaintiff to preserve the potential evidence. Later cases have indicated that such a promise is a necessary element. In fact, even the court that decided *Smith* has suggested that such is the case. *Reid v. State Farm Mutual Automobile Insurance Co.*, 173 Cal.App.3d 557, 580–81, 218 Cal.Rptr. 913, 927 (2nd Dist.1985). *Cf. County of Solano v. Delancy*, 215 Cal. App.3d 1232, 264 Cal.Rptr. 721 (1st Dist. 1989); *review den. See also Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 734 P.2d 1177, 1181 (1987); *Spano v. McAvoy*, 589 F.Supp. 423 (N.D.N.Y.1984); *Favaloro v. S/S Golden Gate*, 687 F.Supp. 475, 480–81 (N.D.Cal.1987); *Coley v. Arnot Ogden Memorial Hosp.*, 107 A.D.2d 67, 485 N.Y.S.2d 876, 878 (1985).

Few jurisdictions have recognized the tort of intentional interference with a prospective civil action by spoliation of evidence. *See Murphy v. Target Products*,

---

1. *Pirocchi v. Liberty Mutual Insurance Company*, 365 F.Supp. 277 (E.D.Pa.1973).

580 N.E.2d 687, 689 (Ind.App.1991). *But see Viviano v. CBS, Inc.,* 251 N.J.Super. 113, 597 A.2d 543, *certif. den.* 127 N.J. 565, 606 A.2d 375 (1992) (willful concealment of evidence).

California recognized an action for negligent spoliation of evidence in *Velasco v. Commercial Building Maintenance Company,* 169 Cal.App.3d 874, 215 Cal.Rptr. 504 (2nd Dist.1985). Relying on the *Smith* case the court analogized negligent spoliation with the tort of negligent interference with a prospective economic advantage. Florida has recognized a negligence claim for spoliation of evidence where a hospital failed to preserve records. The court in *Bondu v. Gurvich,* 473 So.2d 1307 (Fla. App.1984) *review den.* 484 So.2d 7 (Fla. 1986) found that a duty on the part of the hospital in favor of the plaintiff was established by a statute.

At least in the absence of an agreement between the parties,[2] a contract between the parties [3], a special relationship between the parties [4], or a statute [5] the general rule is that there is "no duty owed by an employer to an employee to preserve possible evidence for the employee to aid that person in some future legal action against a third party." *Murphy v. Target Products, supra* and the cases cited therein.

*Coley v. Arnot Ogden Memorial Hospital, supra* is notable for its factual similarity. In that case the plaintiff was injured when he fell from a ladder on the job. The plaintiff contended that the employer's failure to preserve the ladder precluded dis-covery of the manufacturer's name and, therefore, foreclosed a potential products liability action. There was no evidence of a promise by defendant to inspect or safeguard the ladder for plaintiff's benefit. The court found that there was no duty owed by the defendant to the plaintiff to preserve the ladder.

A number of courts have given various reasons, other than a lack of an agreement, for refusing to adopt the spoliation tort. These include: (1) the availability of alternative remedies such as discovery sanctions and adverse inferences,[6] (2) the uncertainty as to the extent or the existence of actual damage,[7] (3) the fact that the evidence was spoliated by a third party who was not a party to the action in which the evidence would have been used.[8] *See* Lionberger, *Interference with Prospective Civil Litigation By Spoliation of Evidence and Should Texas Adopt a New Tort?* 21 St. Mary's L.J. 209 (1989) (hereafter Lionberger); and Thompson, *supra.*

It is obvious that the preservation of items which might be relevant evidence in either prospective or ongoing litigation is desirable. The preservation of such evidence would presumably increase the likelihood of a true and just verdict. However, there are countervailing policy considerations that weigh against the adoption of a tort for spoliation of evidence.

"Speculation is a prime concern in the context of a spoliation claim because: it is impossible to know what the destroyed evidence would have shown. It would

---

**2.** *See Pirocchi v. Liberty Mutual Insurance Co., supra.*

**3.** *Miller v. Allstate Insurance Co.,* 573 So.2d 24 (Fla.App.1990); *review den.* 581 So.2d 1307 (Fla. 1991).

**4.** *Caldwell v. Philadelphia,* 358 Pa.Super. 406, 517 A.2d 1296 (1986), *app. den.* 517 Pa. 597, 535 A.2d 1056 (1987) (police officer—injured motorist, no duty).

**5.** *Fischer v. Travelers Insurance Co.,* 429 So.2d 538 (La.App. 4th Cir.1983), writ not considered 433 So.2d 159 (La.1983) (police officer's duty to file accident report).

**6.** *See Miller v. Montgomery County,* 64 Md.App. 202, 494 A.2d 761, 768 (M.D.Ct.Spec.App.1985) *cert. den.* 304 Md. 299, 498 A.2d 1185 (1985) (no need for spoliation tort because of adverse inference is an appropriate remedy).

**7.** *Federated Mutual Insurance Co. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434 (Minn.1990).

**8.** *See Koplin v. Rosel Well Perforators, Inc., supra* (plaintiff-employee had no cause of action against employer who allegedly intentionally destroyed defective clamp and thus interfered with prospective claim against the manufacturer); *see also Parker v. Thyssen Mining Construction, Inc.,* 428 So.2d 615, 618 (Ala.1983); *Murphy v. Target Products, supra; cf. Miller v. Montgomery County, supra.*

seem to be pure guesswork, even presuming that the destroyed evidence went against the spoliator, to calculate what it would have contributed to the plaintiff's success on the merits of the underlying lawsuit. Given the plaintiff has lost the lawsuit with the spoliated evidence, it does not follow that he would have won it with the evidence." *Federated Mutual Insurance Co. v. Litchfield Precision Components, Inc., supra* at 437; *see also* Thompson at n. 193.

In *Smith* the court addressed this concern by simply analogizing the claim to a claim for interfering with a prospective business advantage. This is not a valid analogy.

"For the most part the 'expectancies' thus protected have been those of future contractual relations, ... In such cases there is a background of business experience on the basis of which it is possible to estimate with some fair amount of success both the value of what has been lost and the likelihood that the plaintiff would have received it if the defendant had not interfered.... When the attempt has been made to carry liability for interference beyond such commercial dealings, and into such areas as exclusion from social organizations, or deprivation of the chance of winning a contest, the courts have been disturbed by a feeling that they were embarking upon uncharted seas, and recovery has been denied; and it is significant that the reason usually given is that there is no sufficient degree of certainty that the plaintiff ever would have received the anticipated benefits. W. Prosser & W. Keeton, *The Law of Torts* § 129, at 1006 (5th ed. 1984).

This uncertainty increases where, as here, the party asserting the spoliation claim does not have the burden of proof in the underlying products liability action on the issues the missing evidence would speak to. Louisville apparently contends that it is prejudiced by the missing ladder because if the ladder were available it might establish that the ladder was not manufactured by Louisville or it might assist Louisville in establishing that the ladder was not defective when it left its hands. The burden of proving that the ladder was manufactured by Louisville and that it was defective rests with Dalton Edwards. If Dalton Edwards does not produce evidence establishing to a probability that the ladder was manufactured by Louisville and that it was defective Louisville will prevail. On the other hand, should Dalton Edwards meet his burden, it would seem to follow that the evidence presented would necessarily have established that the presence of the ladder *probably* would not have benefited Louisville in its defense.

The courts must also be concerned with interference with a person's right to dispose of his own property as he chooses. This is particularly true where the evidence is in the hands of the third party. Should an auto salvage yard become responsible for another's tortious act because it destroys a wrecked vehicle that may constitute relevant evidence in a suit against either the vehicle's manufacturer or the other driver? Actual or constructive knowledge would not seem to establish a reasonable limitation on such liability.[9] In the present case there are indications that the ladder involved in Dalton Edward's accident had been taken out of service previously but had somehow found its way back into service at the time of Dalton Edwards' injury. Under the circumstances it can be argued that the destruction of the ladder served the laudable purpose of increasing worker safety. If this was, in fact, the purpose is it reasonable to hold Boeing responsible for Dalton Edwards' injury as a result regardless of the outcome of the underlying liability suit?[10]

---

9. Shouldn't the operator of the salvage yard know that a claim for at least property damage is likely and that the areas and extent of damage to the vehicle might be relevant in establishing fault?

10. It would also seem that if Louisville has a valid claim for spoliation of evidence against Boeing then presumably Dalton Edwards would also potentially have such a claim. In effect, Boeing would become the insurer against loss of the underlying liability suit for both parties—

Whether there is a genuine need for such delictual responsibility is also a valid consideration. There are already remedies available that could be used to address the destruction of evidence in many cases. Thompson at n. 211–227. Where applicable, discovery sanctions can effectively address the problem of destroyed evidence. Fed.R.C.P. 37 and La.C.Civ.P. art. 1471. These statutes afford the judge broad discretion in fashioning a remedy appropriate to the circumstances. That these sanctions can be an effective remedy where applicable is undeniable.[11]

Where discovery sanctions are not applicable courts may use evidentiary presumptions or burden shifting to remedy the effects of evidence destruction. *See McElroy v. Allstate Insurance Co.*, 420 So.2d 214 (La.App. 4th Cir.) *cert. den.* 422 So.2d 165 (La.1982); *Vick v. Texas Employment Com.*, 514 F.2d 734, 737 (5th Cir.1975); Lionberger at n. 95–99; Thompson at n. 227. While it is true that this offers no benefit where destruction of evidence is by a person not a party to the litigation it also seems that under those circumstances there is a corresponding decreased likelihood that the third party will deliberately destroy the evidence for an improper purpose.

It has also been suggested that recognition of a tort for spoliation of evidence is inconsistent with the policy favoring final judgments. A plaintiff who has lost his primary suit may try for a second bite by trying to establish some piece of relevant evidence was not preserved. Thompson at n. 210.

Against the backdrop of decisions from other jurisdictions and these policy considerations this court concludes that the Louisiana Supreme Court would not recognize a cause of action in favor of Louisville under the circumstances of this case.

The Louisiana Supreme Court has shown that it intends to move with caution in expanding new areas of delictual responsibility. In *Great Southwest Fire Insurance Co. v. CNA Insurance Cos.*, 557 So.2d 966 (La.1990), the court indicated that it was not prepared to recognize an action for negligent interference with contract. The court stated:

"This court recently recognized for the first time in some 87 years the possibility of a narrowly drawn action for *intentional* interference with contractual rights and indicated that it would proceed with caution in expanding that cause of action. *9 To 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La.1989)." 557 So.2d at 969.

*See also LeJeune v. Rayne Branch Hospital, supra* at 569 (damages for mental anguish due to negligent infliction of injury to a third party); *PPG Industries, Inc. v. Bean Dredging, supra* (recovery of economic loss for negligent interference with contractual relations); *Devore v. Hobart Manufacturing Co.*, 367 So.2d 836 (La. 1979) (negligent misrepresentation).

In the present case Boeing did not agree with *Louisville* to preserve the ladder for use as evidence. There was no "special relationship" between Boeing and Louisville.[12] Louisville does not have the burden of proof on the issues the missing ladder would allegedly speak to. Boeing is not a party to the original products liability action brought by Dalton Edwards.

Recognition of Louisville's claim under these circumstances would require the adoption of a cause of action for spoliation of evidence as expansive or more expansive than any recognized in any jurisdiction in this country. It is not necessary for this court to determine whether the Louisiana Supreme Court would recognize a claim for spoliation of evidence under any circum-

---

whoever lost the underlying suit would recover on the spoliation claim.

**11.** "In fact, dismissal or default judgment is the penalty involved in more than half of the reported discovery sanction cases." L. Solum and S. Marzen, *Destruction of Evidence,* 16 Fall Litigation 11 (1989).

**12.** *See Fox v. Board of Supervisors of Louisiana State University, etc.,* 576 So.2d 978 (La.1991) (no duty to affirmatively act absent some special relationship between the parties).

stances. This court concludes that Louisville's claim would not be recognized under the circumstances of this case.

Accordingly, it is recommended that the motion for summary judgment of Boeing Louisiana, Inc. be granted.

Under the provisions of 28 U.S.C. 636(b)(1)(C) the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE WILL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDS ON APPEAL.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 18th day of May, 1992.