888 P.2d 936

**Mary BUSH, as Personal Representative of the Estate of Janice Bush, Plaintiff–Appellee,**

v.

**Harry THOMAS, D.O., Defendant–Appellant,**

v.

**Casey RAMIREZ, Third–Party Defendant.**

No. 15101.

Court of Appeals of New Mexico.

Sept. 19, 1994.

Certiorari Denied Jan. 5, 1995.

Cynthia A. Fry, Harold Worland, Albuquerque, for defendant-appellant.

*OPINION*

APODACA, Judge.

Defendant Dr. Harry Thomas (Defendant) appeals a judgment after a jury verdict finding him liable for negligent spoliation of evidence. Defendant raises the following issues on appeal: (1) whether New Mexico should recognize the tort of negligent spoliation of evidence; (2) if New Mexico does recognize this cause of action, whether the claim failed in this case because Plaintiff Mary Bush (Plaintiff), as personal representative of the estate of Janice Bush (Decedent), failed to prove that Defendant had a legal or contractual duty to preserve his records of Decedent's treatment; and (3) whether the claim failed because Plaintiff did not prove that loss of the records significantly impaired her ability to present her underlying claim for medical malpractice, an essential element of negligent spoliation of evidence. Assuming that New Mexico would recognize a cause of action for negligent spoliation of evidence and that Defendant had a duty to preserve the records, we hold that Plaintiff nevertheless failed to prove that loss of the medical records impaired her ability to prove her claim of malpractice against Defendant. We therefore reverse the trial court's judgment. In light of our holding, we need not determine whether negligent spoliation of evidence should be recognized as an independent tort in New Mexico and whether a physician under the facts of this appeal had any duty to preserve a patient's medical records for use in a potential civil action brought by the patient.

**BACKGROUND**

1. *Evidence Related to Plaintiff's Underlying Medical Malpractice Claim.*

Plaintiff sued Defendant for medical malpractice in connection with the death of Decedent, Plaintiff's daughter. Although Defendant's medical records of Decedent were not found, Decedent's treatment by Defendant was paid for by Medicaid. As a result of such payment, the Medicaid records showed the date of each visit, the diagnosis, and any prescriptions ordered. The evidence

Narciso Garcia, Jr., Albuquerque, for plaintiff-appellee.

showed that Defendant first saw Decedent on September 3, 1986, at which time he prescribed Valium, known generically as diazepam. Defendant first prescribed Darvon, known generically as propoxyphene hydrochloride, for Decedent in January 1988. He prescribed Darvon for Decedent seventeen times, the last prescription being made on June 6, 1989, the day before Decedent's death.

According to the Medicaid records, a diagnosis of "opioid dependence" originated from Defendant's office in connection with six of Decedent's visits. Other evidence unrelated to Defendant's treatment, including University of New Mexico Hospital records and the testimony of another doctor, Dr. Kassicieh, who had also treated Decedent, showed that Decedent had a history of drug abuse. Defendant testified that Decedent did not exhibit symptoms indicating she was abusing Darvon. Decedent saw Defendant four times on the date her Darvon prescription would have been used up if taken as prescribed; on all other occasions, she came in a week or two after the prescription would have been used up. Defendant's former office manager testified that she noted the Medicaid codes for the diagnoses on Defendant's bills and that Defendant never gave her a chart with the diagnosis "opioid dependence."

On the evening before her death, Decedent sniffed paint for thirty to forty-five minutes before going to bed. She was discovered dead the next morning. The bottle of Darvon prescribed for Decedent by Defendant the previous day was found in her purse. It contained forty-five of the seventy-two tablets that had been prescribed. The autopsy report noted that Decedent's body contained Darvon, in the amount of 3.5 milligrams per liter, and toluene, a propellant found in spray paint, in an undetermined amount. The report concluded that Decedent's death was caused by "[d]rug (propoxyphene) intoxication."

Plaintiff's expert testified that, based on the police report, autopsy report, depositions, and Medicaid records, Defendant failed to use the knowledge and skill ordinarily used by reasonably qualified doctors under similar circumstances. He also expressed the opinion that Defendant's failure to treat Decedent's pain with less addictive drugs and his failure to intervene in her drug abuse problem contributed to her death. The amount of Darvon in Decedent's body was within the range associated with overdose.

Defendant's expert disagreed with the autopsy report's conclusion that Decedent died from an overdose of Darvon. Instead, he opined that her death was caused by a combination of Darvon and inhalation of spray paint fumes. He testified that the amount of Darvon in Decedent's body was not consistent with the number of tablets missing from the bottle; rather, had Decedent taken twenty-seven tablets of Darvon just before her death, the level of Darvon in her body would have been much higher. He stated that, according to some medical literature, for persons who are not tolerant to Darvon, the average level of the drug that causes death was 8.9 milligrams per liter. He was of the opinion that, to a person tolerant of Darvon, such as Decedent, 3.5 milligrams of Darvon would not be lethal and that it was not lethal in this case.

### 2. Evidence Related to the Negligent Spoliation of Evidence Claim.

Before Decedent's death, Defendant was investigated by the Medicaid Fraud Unit. On March 13 or 14, 1989, the Medicaid Fraud Unit searched Defendant's medical office and confiscated about 6,000 patient files. Decedent's file did not appear on the Medicaid inventory of the confiscated files. Defendant testified that he usually created a temporary chart for a patient when the patient's chart could not be found. He did not know what had happened to the temporary chart he would have created for Decedent if her file had been confiscated in March 1989. He had no records of her four visits between March 1989 and June 6, 1989. He also testified that his office loses records all the time.

Following Defendant's failure to produce the medical records in connection with the underlying claim, Plaintiff amended her complaint to include allegations of *both* intentional and negligent spoliation of evidence. At the close of Plaintiff's case, Defendant moved for a directed verdict on those claims. The

trial court granted a directed verdict on the *intentional* spoliation of evidence claim and denied it on the *negligent* spoliation of evidence claim. In connection with Plaintiff's underlying malpractice claim, the jury found in a special verdict form that Defendant was negligent in his treatment of Decedent but that such treatment was not a proximate cause of her death. However, the jury found in connection with Plaintiff's negligent spoliation of evidence claim that Defendant negligently destroyed or concealed Decedent's records and that this destruction or concealment was a proximate cause of Plaintiff's injuries and damages in presenting her malpractice case. The jury awarded Plaintiff $3,000 in actual damages and $50,000 in punitive damages. Defendant's motion for a new trial, remittitur, or judgment notwithstanding the verdict was denied by the trial court.

**DISCUSSION**

█ "Spoliation of evidence in a prospective civil action occurs when evidence pertinent to the action is destroyed, thereby interfering with the action's proper administration and disposition." *Hirsch v. General Motors Corp.*, 266 N.J.Super. 222, 628 A.2d 1108, 1113 (Law Div.1993) (citations omitted). New Mexico has not recognized either negligent or intentional spoliation of evidence as a tort. Three states, Alaska, California, and Florida, have done so. *See Hazen v. Municipality of Anchorage*, 718 P.2d 456, 463 (Alaska 1986); *Smith v. Superior Court*, 151 Cal.App.3d 491, 198 Cal.Rptr. 829, 832 (1984); *Miller v. Allstate Ins. Co.*, 573 So.2d 24, 27 (Fla.Dist.Ct.App.1990), *review denied*, 581 So.2d 1307 (Fla.1991); *Bondu v. Gurvich*, 473 So.2d 1307, 1312 (Fla.Dist.Ct.App.1984), *review denied*, 484 So.2d 7 (Fla.1986). The cause of action has been rejected or not recognized for various reasons in numerous jurisdictions. *See, e.g., Edwards v. Louisville Ladder Co.*, 796 F.Supp. 966, 971–72 (W.D.La.1992) (no special relationship between the parties gave rise to any duty to preserve evidence); *Parker v. Thyssen Mining Constr., Inc.*, 428 So.2d 615, 618 (Ala. 1983) (employer had no duty to preserve evidence relevant to employee's third-party claim); *La Raia v. Superior Court*, 150 Ariz. 118, 722 P.2d 286, 289 (1986) (en banc) (alternative cause of action available); *Rodgers v. St. Mary's Hosp.*, 198 Ill.App.3d 871, 145 Ill.Dec. 295, 556 N.E.2d 913, 916 (1990) (statutory cause of action available), *aff'd*, 149 Ill.2d 302, 173 Ill.Dec. 642, 597 N.E.2d 616, 619–20 (1992); *Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 734 P.2d 1177, 1183 (1987) (absent independent source of duty, tort not recognized); *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.*, 456 N.W.2d 434, 439 (Minn.1990) (resolution of underlying claim necessary to prove damages and prevent speculative recovery); *Hirsch*, 628 A.2d at 1118 (where defendant raised spoliation claim against plaintiff, discovery sanctions adequate); *see generally* Thomas G. Fischer, Annotation, *Intentional Spoliation of Evidence, Interfering with Prospective Civil Action, as Actionable*, 70 A.L.R.4th 984 (1989). The various reasons given by courts rejecting the tort can be summarized as lack of agreement or duty to preserve the evidence; availability of alternative remedies, such as sanctions; uncertainty as to the extent or existence of damages; and the fact the evidence was spoliated by a third party that was not involved in the action in which the evidence would have been used. *Edwards*, 796 F.Supp. at 969 (citing Philip A. Lionberger, Comment, *Interference with Prospective Civil Litigation by Spoliation of Evidence and Should Texas Adopt a New Tort?*, 21 St. Mary's L.J. 209 (1989)). However, as we noted previously, we need not decide in this appeal whether negligent spoliation of evidence should be recognized as a cause of action in New Mexico because we conclude that, even if it were recognized, Plaintiff's claim would fail for the reasons discussed below.

█ One court has held that the elements of the tort of negligent spoliation of evidence are: (1) existence of a potential civil action; (2) a legal or contractual duty to preserve evidence that is relevant to the potential civil action; (3) destruction of that evidence; (4) significant impairment of the ability to prove the civil action; (5) a causal relationship between the destruction of the evidence and the inability to prove the civil action; and (6) damages. *Continental Ins. Co. v. Herman*, 576 So.2d 313, 315 (Fla.Dist.Ct.App.1990), *review denied*, 598 So.2d 76 (Fla.1991). In this case, even assuming that all the other elements of Plaintiff's claim for negligent spoliation of evidence were satisfied, we are com-

**58**

pelled to conclude that Plaintiff failed to prove her ability to present her malpractice claim was impaired, based on the jury's verdict form returned on the underlying malpractice claim.

■ "A directed verdict is proper only when the jury could not reasonably and legally reach any other conclusion, given the facts and circumstances of the case before it." *Plummer v. Devore*, 114 N.M. 243, 246, 836 P.2d 1264, 1267 (Ct.App.), *cert. denied,* 114 N.M. 82, 835 P.2d 80 (1992). On appeal, the court resolves all contradictions in the evidence in favor of the party resisting the motion. *Id.* However, if the facts bearing on the issue of proximate cause are not in dispute and the reasonable inferences to be drawn from the facts are plain and consistent, the issue becomes one of law. *See Adamson v. Highland Corp.*, 80 N.M. 4, 8, 450 P.2d 442, 446 (Ct.App.1969).

■ Even without Defendant's medical records, Plaintiff was able to present considerable evidence that Defendant's treatment of Decedent was negligent, and in fact the jury explicitly found that Defendant's treatment rose to the level of negligence. However, faced with conflicting evidence on the cause of Decedent's death, the jury concluded that Defendant's negligent treatment was not a proximate cause of Decedent's death. Plaintiff has not appealed this finding. Consequently, we are bound by that finding on appeal, *see* SCRA 1986, 12–213(A)(3) (Cum. Supp.1994), which ultimately forms the basis for our disposition.

Plaintiff contends that the medical records would have helped her establish that Defendant's treatment was a proximate cause of Decedent's death because the evidence in those records might have contradicted Defendant's testimony. There was no evidence, however, indicating that the records would have shed any light on the *cause* of Decedent's death. The only issue on which the records would have been of use was on the question of whether Defendant's treatment of Decedent fell below the required standard of care. Because the jury, in its verdict form, expressly concluded that Defendant's treatment of Decedent did indeed rise to the level of negligence, clearly the lack of the records did not hinder Plaintiff's attempt to persuade

the jury on this issue. Instead, it was on the basis of the conflicting and independent evidence and testimony concerning the actual cause of death that Plaintiff's underlying malpractice claim failed. This testimony on causation was separate and apart from any evidence that could have been produced from the missing medical records. It necessarily follows that Plaintiff failed to prove that the destruction or loss of the records significantly impaired her ability to prove her medical malpractice claim. *See Continental Ins. Co.,* 576 So.2d at 315. We thus reverse the trial court's denial of Defendant's motion for judgment notwithstanding the verdict.

**CONCLUSION**

We hold that, even assuming that New Mexico would recognize the tort of negligent spoliation of evidence, Plaintiff did not prove that the loss or destruction of the evidence impaired her ability to prove her underlying cause of action. Thus, Plaintiff failed to prove an essential element of the tort. Consequently, this is not an appropriate case to address the issue of whether or not the tort should be recognized in New Mexico. We therefore reverse the trial court's judgment and remand for the entry of judgment for Defendant. No costs are awarded on appeal.

**IT IS SO ORDERED.**

FLORES and BOSSON, JJ., concur.